IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN MOON, | No. 2:15-CV-0027-MCE-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| JOE A. LIZARRAGA, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: Lizarraga; Vanni; Eloroza; Myrsh; Cantu; Cortez; Dickerson; Barton; Meija; Stacy; Lopez; Higgins; Bennett; Davis; Drake; Castillo; Almodova; McCloughan; Villanueva; Westson; Jenkins; Bell; and one other whose name cannot be deciphered from the hand-written complaint.  According to plaintiff, defendants collectively conspired to file "false/forged instruments" and "aided and/or abetted the abduction from the minimum yard into solitary confinement. . . ."  Plaintiff, who is black, states this was done with "racial hatred" and "in retaliation" to keep him from seeking a work assignment in the prison firehouse.  Plaintiff adds that defendants are "chilling Plaintiff Moon from his ordinary firmness in redressing the government through the 602 grievance process. . . ."

More specifically, plaintiff claims that defendant Jenkins grabbed his testicles, squeezed, and told plaintiff that something "more physical" and "harmful" would happen unless plaintiff stopped filing inmate grievances.  Plaintiff adds that the "chief of the MCSP firehouse," who is not specifically named, told plaintiff: "Based on your color of skin we don't need you at the firehouse."  Next, according to plaintiff, defendant Higgins directed her "underling inmate library clerk" to physically attack plaintiff in order to prevent him from using the law library.  Plaintiff adds that defendants Lizarraga, Vanni, Eloroza, Stacy, Bennett, Castillo, and Lopez "adversely transferred" plaintiff to a different prison to allow officers at that institution to "finish

the assassination on Plaintiff Moon." According to plaintiff, this transfer prevented him from "exercising his rights. . . ."

## II.  DISCUSSION

While plaintiff's complaint is difficult to decipher, and his allegations are largely vague and conclusory, it appears that plaintiff is asserting the following claims: (1) denial of equal protection based on his allegation that he was placed in solitary confinement based on his race; (2) use excessive force based on his allegation that defendant Jenkins grabbed his testicles; and (3) retaliation.  On September 28, 2015, the court issued an order stating that the complaint appeared appropriate for service on defendant Jenkins and identifying various defects in the complaint with respect to the remaining defendants.  Plaintiff was provided an opportunity to amend and was advised that, if he elected not to amend, the action would proceed as against defendant Jenkins only and the remaining defendants would be dismissed.  Plaintiff has not filed an amended complaint.  The court now recommends dismissal of all claims and defendants except plaintiff's claims against defendant Jenkins.

### A.  Excessive Force

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so

serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

The court finds that plaintiff's allegation that defendant Jenkins grabbed and squeezed his testicles while threatening more serious harm are sufficient to sustain an Eighth Amendment excessive force claim. Plaintiff's allegation that defendant Higgins directed her "underling inmate library clerk" to physically attack plaintiff, however, is insufficient because plaintiff has not identified any use of force.

4

B. **Equal Protection**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

///

///

In this case, plaintiff alleges that defendants conspired to place him in solitary confinement because he is black. Plaintiff also alleges that the unnamed "chief of the MCSP firehouse" would not consider him for a work assignment because he is black. These allegations are insufficient because they do not link specific conduct to a particular named defendant. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

**C.    Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner

plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, plaintiff alleges that defendant Jenkins grabbed and squeezed his testicles, and threatened more harm, unless he stopped filing inmate grievances. This allegation is sufficient, if true, to establish that plaintiff was engaged in protected activity (filing inmate grievances) and that defendant Jenkins acted because plaintiff engaged in this protected activity. Given the lack of any penological interest in grabbing and squeezing an inmate's testicles, and the chilling effect such conduct would have, the complaint is sufficient to sustain a retaliation claim against defendant Jenkins (in addition to an excessive force claim arising from the same alleged conduct).

Plaintiff's allegations relating to a retaliatory prison transfer and placement in solitary confinement, however, are not sufficient in that they fail to link specific conduct to a particular defendant.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. This action proceed as against defendant Jenkins on plaintiff's excessive force and retaliation claims only; and

2. All other defendants and claims be dismissed for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of

1  objections.  Failure to file objections within the specified time may waive the right to appeal.
2  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

   DATED: February 23, 2016

                                          _____
                                          **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE